187 So.2d 224

**CITY OF TRUSSVILLE et al.**

v.

**L. E. PORTER et al.**

**6 Div. 231.**

Supreme Court of Alabama.

March 31, 1966.

Rehearing Denied June 16, 1966.

Bishop & Carlton, Birmingham, for appellants.

468

Berkowitz, Lefkovits, Vann, Patrick & Smith, Birmingham, for appellees.

HARWOOD, Justice.

This is an appeal from a decree of Hon. Wm. C. Barber, of the Tenth Judicial Circuit, enjoining the appellants from arresting or interfering with any of the appellees engaging in work at the site of the Southern Rock Products Company, Inc. quarry, located within the police jurisdiction of the City of Trussville, so long as such quarry is operated within certain restrictions specified in the injunctive decree. The appellees are employees of the Southern Rock Products Company, Inc., which for convenience will hereinafter be referred to as the company.

The present case is intertwined with another proceeding, Southern Rock Products, Inc. v. Guy L. Self, individually and as Building Inspector of the City of Trussville, Carl Stephens, individually and as Chief of Police of the City of Trussville, and the City of Trussville. A transcript of the record in such proceedings is made a part of the record in the present case.

In the Self proceedings just referred to, the company had sought a temporary injunction restraining the named respondents from interfering with the company's conduct of its quarrying business by threatening to arrest the agents and employees of the company if they should engage in work at the quarry.

After a hearing before the Hon. Sam R. Shannon, Jr., Special Circuit Judge in Equity for the Tenth Judicial Circuit, a decree was entered on 3 May 1965, denying the petition for a temporary injunction. An appeal was perfected from this decree and a judgment of affirmance has been rendered. (Southern Rock Products Co. v. Self, post p. 488, 187 So.2d 244, decided this day.)

Thereafter on 31 May 1965, the present complaint was filed by the employees of the company.

We note that while the parties are different, in that the company was the complainant in the first proceedings, and the employees of the company are the complainants in the present suit, and the respondents are not in all respects the same in each suit, Self, the Building Inspector not being named as a respondent in the second suit, and Maurice Bishop as City Attorney, and John C. Yarbrough as Mayor, are named as respondents, whereas neither was a respondent in the first proceedings, yet the City of Trussville and Carl Stephens, the Chief of Police, are respondents in both proceedings.

The prayer for relief in each proceeding is essentially the same in that in the first proceeding the injunction was sought to prevent threatened arrests, whereas in the present proceeding the injunction sought was to prevent the continuation of arrests of employees and harassments resulting from such arrests.

Thus we have the anomolous situation of one chancellor having denied the company's petition for a temporary injunction to prevent arrests, and a second decree, which is final in nature (the one now con-

sidered) enjoining a continuation of such arrests on petition of the employees.

The evidence below, submitted in the form of affidavits, letters, and other documents, tends to show that the company agreed to lease land from Arthur I. Appleton on which it proposed to operate a quarry to mine and crush limestone.

Appleton's land was within the police jurisdiction of Trussville and subject to the zoning ordinance of the city. (Ordinance 75 of the City of Trussville, Alabama, adopted 10 November 1959.)

The lands in question were classified under the ordinance "M–2 General Industry" and such classification permitted the land to be used for:

"Any industrial, service or commercial uses, except those which in the opinion of the Building Inspector would cause noise, smoke, gas, vibration, fumes, dust or other objectionable conditions which would affect a considerable portion of the city."

At a regular meeting of the City Council on 23 March 1965, it was reported that Mr. Joseph Conzelman, Jr., had outlined a proposed operation of the quarry in question, and it was recommended that the City Clerk and the City Building Inspector issue the necessary license and permit for such operation.

Previously, on 17 March 1965, at a regular meeting of the Trussville Planning Board, Mr. Joseph Conzelman, Jr., and Mr. Bill Natter presented a proposal for the operation of a quarry on the Appleton land. Mr. Conzelman stated that plans for the quarry operation were being prepared and would be presented to the Building Inspector when completed. After this discussion a motion was passed that the Building Inspector be authorized to issue the necessary permit.

However, after investigation of the application, the Building Inspector denied the permit, stating:

"The operations proposed by Southern Rock Products Company for which they sought a permit in applications dated March 22, 1965, and April 13, 1965, would cause noise, vibration, fumes, dust, and other objectionable conditions which would affect a considerable portion of Trussville."

The company was then informed of the formal denial of application for a building and use permit.

At a meeting of the City Council on 28 April 1965, a resolution was adopted ratifying the action of the Mayor in directing the City Clerk to return the license fee of $25.50 theretofore paid. The resolution stated that this action was taken after receiving the report of the Building Inspector that the proposed quarry operation did not conform to the requirements of Ordinance 75 (Zoning Ordinance).

Despite the refund of the license fee and refusal of the permit, the company began operations of the quarry. This was done, under appellee's evidence, because the company officials, having been assured that the license and permit would be issued, entered into a contract with Appleton to pay $1,000 per month for not less than four years for the mining of limestone, and also entered into contracts with other parties for the sale of limestone to be produced at the quarry.

■ The fact that a business license was issued to the company, and later revoked, can be laid aside in a consideration of this appeal, in that the issuance of a business license in no wise implies a consent of the governing body for the operation of such business. A business license may be imposed even on an unlawful business. Barron v. Wilson, 278 Ala. 621, 179 So.2d 746; Casmus v. Lee, 236 Ala. 396, 183 So. 185, 118 A.L.R. 822.

It is uncontradicted under the evidence that no permit was ever issued to the company for the necessary construction or for the operation of the quarry.

As before stated the land on which the quarry is located is classified as "M 2 General Industry" and the provisions for the use of such land have been set out, supra.

Other portions of Ordinance 75 pertinent to this review provide:

"*Section 14. Uses.* In each district no other use than the types specified as 'permitted' or 'permitted on appeal' shall be allowed. (See Article 7.) Uses specified as 'permitted' shall be permitted upon application to the building inspector.

\*     \*     \*     \*     \*     \*

"*36.94. Use:* the purpose for which land or a building or other structure is designed, arranged, or intended, or for which it is or may be occupied or maintained.

"*Section 44. Certificate of Occupany Required.* No land \* \* \* shall be used until the Building Inspector of the City shall have issued a Certificate of Occupancy stating that such land is found to be in conformity with the provisions of this ordinance.

\*     \*     \*     \*     \*     \*

"*Section 45. Penalties*

Any person violating any provision of this ordinance shall be fined upon conviction not less than two dollars ($2.00) nor more than one hundred dollars ($100.-00) and costs of court for each offense. Each day such violation continues shall constitute a separate offense."

■ Appellant's assignment of error No. 3. is to the effect that the lower court erred in enjoining the appellant from the enforcement of the ordinances of the City of Trussville, while assignment of error No. 4 is to the effect that the court erred in enjoining the enforcement specifically of Ordinance 75 of the City of Trussville. These assignments are argued together, and properly so since they are related and present a single

question. Boohaker v. Trott, 274 Ala. 12, 145 So.2d 179.

In Harris v. Barrett, 206 Ala. 263, 89 So. 717, the rule as to enjoining the enforcement of criminal laws is stated as follows:

"In this jurisdiction we have adhered to the rule that equity will not interfere with the enforcement of criminal law or check the activities of prosecuting officials when the injury inflicted or threatened is merely the vexation of arrest and punishment of complainant—leaving such complainant free to litigate the question of unconstitutionality of the statute or ordinance, construction or application thereof, in the defense, at the trial for its violation." (Citation of numerous Alabama authorities omitted.)

■ Violations of state laws and penal municipal ordinances stand upon the same footing in this aspect. Brown v. Mayor and Alderman of Birmingham, 140 Ala. 590, 37 So. 173. Where distinct offenses are validly created arrests may be made for each infraction, and equity cannot be invoked to restrain exertion of municipal power to enforce its penal laws on the ground that another distinct offense (as measured by a day's dereliction) has been punished though identical in nature. The offender cannot predicate immunity on his own wrong conduct. Barrett v. Rietta, 207 Ala. 651, 93 So. 636.

Counsel for the appellees argue that the right to earn a livelihood is a property right entitled to protection, and that a court of equity has the power and duty to interfere by injunction where criminal or quasi criminal prosecutions will destroy such property right. We have read the cases cited by the appellees in support of their argument.

■ It is true that under certain conditions the mere fact that an act is declared criminal does not divest a court of equity of jurisdiction to prevent by injunction a viola-

tion of property rights where the aggrieved party has no adequate remedy to prevent irreparable injury that might result from the inability of a court of law to redress his rights. Port of Mobile v. Louisville and Nashville R. R. Co., 84 Ala. 115, 4 So. 106.

However, such principle envisions the protection of a lawful property right. There is no contention by the appellees that Ordinance 75 is invalid. They contend that its application to them is improper in that they would be deprived of their right to earn a living. The evidence shows that the company has never obtained the use permit necessary for the lawful operation of the quarry. Its operation of the quarry without such permit is unlawful under Ordinance 75. The continued efforts of the employees to forward such unlawful operation must necessarily be deemed unlawful, for certainly they stand in no better position than their employer.

It is our conclusion that assignments of error 3 and 4 are well taken, and that the court erred in entering the decree enjoining the City of Trussville from arresting the appellees in an effort to enforce Ordinance 75.

Counsel for appellants have also argued that the court erred in its decree in that the appellees have not exhausted their administrative remedies in having reversed the action of the Building Inspector in refusing a use permit to the company, and further that the injunction decree herein reviewed is an injunction against an injunction, sometimes referred to as a counter injunction, and should not have been issued.

Being clear to the conclusion that the point to which we have written is wholly decisive of this appeal, we pretermit a discussion of these points.

Reversed and remanded.

LIVINGSTON, C. J., and SIMPSON and MERRILL, JJ., concur.