This is an appeal from a preliminary injunction entered by the Jefferson County Circuit Court following a suit brought by the appellees, M.M. Victory, Ernest C. Wimberly and Liberty Communications, Inc., a corporation (hereinafter referred to as plaintiffs), seeking both preliminary and permanent injunctions to restrain the appellants (hereinafter referred to as Watts) from enforcing a prior judgment which Don Watts had obtained in the Jefferson County Circuit Court in a separate proceeding.
The application for preliminary injunction was submitted solely on the plaintiffs' verified complaint and argument of counsel, so that the only facts before us are those alleged in the plaintiffs' complaint. The essential averments of that complaint are:
Prior to 1970, the Watts, along with others, including the plaintiffs, were stockholders in a corporation known as Telvue Cable of Alabama, Inc. Plaintiff Victory was president of that corporation. During 1970, Telvue negotiated with Liberty Communications, Inc. (one of the plaintiffs) for the acquisition of Telvue by Liberty. A plan was proposed which required approval by 80% of Telvue's stockholders.
In order to induce Watts to agree to the proposed reorganization and acquisition by Liberty, plaintiffs Victory and Wimberly issued to Don Watts a written guaranty agreement on May 24, 1970, which is as follows:
"Dear Mr. Watts:
 "In reference to the stock which you own in Telvue Cable Alabama, Incorporated, this is to advise that the undersigned guarantee you a minimum of $3.00 per share for your stock in Telvue Cable Alabama, Incorporated payable on or before 90 days from date. In the event the stock at the end of 90 days can be sold for more than that sum, this does not preclude you from receiving the additional amount.
[Signed]
"M.H. Victory
"Ernest C. Wimberly"
Don Watts agreed and the acquisition and reorganization took place.
On June 30, 1971, Don Watts filed suit against Victory and Wimberly alleging damages for breach of the above contract. The case was discontinued against Wimberly when service could not be perfected on him. Thereafter, a jury rendered a verdict in Watts' favor in the amount of $18,000. Judgment was entered on the verdict and it has not been paid. *Page 562 
On February 21, 1975, Watts had a garnishment issued against Liberty as Victory's employer. Liberty failed to answer the garnishment; and, on August 4, 1975, a final judgment was taken by Watts against Liberty in the amount of $19,647.45.
Contemporaneously with the filing of the complaint, the plaintiffs deposited this amount with the court. The complaint alleges that Victory and Wimberly had offered to pay Watts $18,000 if he would endorse his Liberty stock over to them. They allege that to allow Watts to collect the prior judgment would constitute unjust enrichment.
The complaint sought to have Watts required either to accept Liberty stock and satisfy the judgment or to accept the money and surrender the stock.
After the acquisition and reorganization, Liberty stock was issued in lieu of Telvue stock. Watts did not accept the Liberty stock and retains the Telvue certificates.
On the basis of these allegations, the court granted the plaintiffs' request for preliminary injunction and Watts appealed.
The specific averment of the complaint and the essence of plaintiffs' argument here is that to allow Watts to retain the stock and recover the judgment ". . . would constitute an unjust enrichment and shock the conscience of this Honorable Court."
Watts argue that two prerequisites must be met before it is proper for a court to issue a temporary injunction: (1) it must satisfy itself that the plaintiff has a fair question to raise as to the existence to a right to relief; and, (2) the court must determine that, on a balance of convenience, interim interference is justified. Watts say that the first of these is controlled by the principles of res judicata. They insist that the matters which Victory seeks to raise in this case were raised or could have been raised in the case brought by Watts claiming damages for breach of contract. Additionally, they maintain that a party to a judgment cannot resort to equity to avoid a judgment at law, unless they can show that the judgment was the result of accident, surprise or fraud of the opposite party unmixed with negligence on the part of the complainant.
As to the second requirement, Watts say no irreparable injury was alleged and insist that the proper course for the appellees was to appeal the prior judgment.
We recognize, of course, that the granting or refusal to grant a preliminary injunction rests largely in the discretion of the trial court and that the court's latitude in this area is considerable. Valley Heating, Cooling Electric Co. v.Alabama Gas Corporation, 286 Ala. 79, 237 So.2d 470 (1970);Drake Associates, Inc. v. Letson, 277 Ala. 512, 172 So.2d 536
(1965). We have defined an abuse of this discretion as ". . . exceeding the bounds of reason, all the circumstances before the lower court being considered." Valley Heating, supra,286 Ala. at 82, 237 So.2d at 472. Moreover, we have said that, to establish an abuse, it is essential to show that the trial court committed a clear or palpable error, without the correction of which manifest injustice will be done. Ex parteJones, 246 Ala. 43, 20 So.2d 859 (1945). Of course, discretion can be abused; and Watts contend that the issuance of a preliminary injunction based solely on the allegations of the complaint constitutes an abuse in the instant case.
Both sides agree that the granting of a temporary injunction is proper when the court has satisfied itself "` . . not that the plaintiff has certainly a right, but that he has a fair question to raise as to the existence of such a right. [and] . . whether interim interference, on a balance of convenience or inconvenience to the one party and to the other, is or is not expedient.' . . ." Coxe v. Huntsville Gas Light Co., 129 Ala. 496,501, 29 So. 867, 869 (1901). *Page 563 
 ". . . The right to a temporary injunction is often said to be measured by the existence of irreparable damage to petitioners, resulting from the proposed illegal and wrongful conduct of respondents. . . ." State v. Mobile O.R. Co., 228 Ala. 533, 536, 154 So. 91, 94 (1934).
Injunctions, however, will not be granted ". . . merely to allay apprehension of injury; the injury must be both imminent and irreparable in a court of law. . . ." Cullman Property Co.v. H.H. Hitt Lumber Co., 201 Ala. 150, 153, 77 So., 574, 577
(1917). As noted by Watts, in brief, no claim was made by the plaintiffs in their complaint (which is all we have before us) that they would suffer any irreparable injury if the preliminary relief was not granted; nor was there any showing as required by our law that such would result. Failure to meet this requirement should have been fatal to the issuance of the preliminary injunction.
With no more than the complaint before it, and the absence of any allegation of irreparable injury to it, we agree that the trial court abused its discretion in granting the preliminary injunction restraining the collection of a prior money judgment. ". . . `abuse of discretion' . . . is really a discretion exercised to an end or purpose not justified by, and clearly against, reason and evidence . . ." Clayton v. State,31 Ala. App. 106, 110, 13 So.2d 411, 415 (1942).
We believe that the sanctity of a prior judgment, regular on its face, the validity of which is not questioned, should not be diminished by an injunction without any allegation or evidence showing the necessity for doing so.
We, of course, do not have the merits of this case before us. The only issue presented on this appeal is the propriety of the issuance of the preliminary injunction on the allegations of the complaint, and that is all that we decide. The evidence may show that the plaintiffs are entitled to some relief. We merely hold that enjoining Watts from any further attempts to collect their judgment (which Victory did not appeal from) was prematurely granted.
REVERSED AND REMANDED.
HEFLIN, C.J., and MERRILL, MADDOX and JONES, JJ., concur.